IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Dennis Owen,<br><br>      Plaintiff,<br><br>v.<br><br>O'Reilly Auto Enterprises, LLC<br>d/b/a O'Reilly Auto Parts,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (ECF NO. 25)**<br><br>Civil No. 2:16-cv-01102<br><br>Magistrate Judge Evelyn J. Furse |

Defendant O'Reilly Auto Enterprises, LLC d/b/a O'Reilly Auto Parts ("O'Reilly") moves the Court[1] for partial judgment on the pleadings. (Mot. for Partial J. on the Pleadings ("Mot."), ECF No. 25.) O'Reilly asks this Court to (1) dismiss Mr. Owen's claim of damages from physical injuries under the Americans with Disabilities Act ("ADA"), (2) exclude evidence of Mr. Owen's physical injuries from his punitive damages claim under the ADA, and (3) dismiss Mr. Owen's intentional infliction of emotional distress claim. (Mot. 3, ECF No. 25.) The Court held a hearing on O'Reilly's Motion on July 12, 2017. (ECF No. 38.) At the conclusion of the hearing, the Court took the Motion under advisement. (Id.) After considering the parties' briefing and oral argument presented by counsel, the Court DENIES O'Reilly's Motion for Partial Judgment on the Pleadings because Mr. Owen does not claim damages from physical injury as part of his ADA claim; making evidentiary rulings based on the pleadings is premature; and Mr. Owen does state a claim for intentional infliction of emotional

---

[1] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 12.)

distress.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On October 27, 2016, Mr. Owen filed the immediate action against O'Reilly, alleging three ADA-related claims, including (1) failure to provide reasonable accommodation, (2) disability discrimination, (3) retaliation, and one state law claim (4) intentional infliction of emotional distress. (See Compl. 9–12, ECF No. 2.) On March 8, 2017, O'Reilly moved the Court for partial judgment on the pleadings. (Mot., ECF No. 25.) O'Reilly asks this Court to (1) dismiss Mr. Owen's claim of damages for physical injuries, (2) exclude evidence of Mr. Owen's physical injuries from his punitive damages claim, and (3) dismiss Mr. Owen's intentional infliction of emotional distress claim. (Mot. 3, ECF No. 25.)

The Court recites the following pertinent facts accepting, as it must, the well-pled factual allegations as true, viewing the allegations in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000); Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013).

This litigation arises out of O'Reilly's refusal to accommodate Mr. Owen's disability request and Mr. Owen's subsequent termination from O'Reilly in February of 2015. (Compl. 8, ECF No. 2.) O'Reilly's store manager, Ms. Jones, hired Mr. Owen as a part-time parts specialist in May 2014. (Compl. ¶ 20, ECF No. 2.) Mr. Owen alleges that during his interview, he "disclosed he had extensive injuries that prohibited him from lifting anything weighing more than three (3) pounds and performing repetitive tasks with his wrists, arms, and shoulders." (Compl. ¶ 16, ECF No. 2.)

Prior to working for O'Reilly, the United States Air Force employed Mr. Owen at Hill Air Force Base. (Compl. ¶¶ 6-7, ECF No. 2.) While there, a piece of an aircraft fell on Mr. Owen injuring his back, neck, arms, wrists, and shoulders, causing him to have thirty-six surgeries, including the fusing of both of his wrists. (Compl. ¶¶ 7-9, ECF No. 2.) Mr. Owen alleges that Ms. Jones told him O'Reilly could accommodate his restrictions by allowing Mr. Owen to assist customers while relying on other employees to perform the tasks that Mr. Owen could not. (Compl. ¶ 18, ECF No. 2.)

Mr. Owen successfully worked as a parts specialist with the requested accommodation between May and August of 2014. (Compl. ¶¶ 18, 21, 24, ECF No. 2.) Mr. Owen alleges that in August of 2014, a coworker complained to Ms. Jones that Mr. Owen "worked too slowly." (Compl. ¶ 22, ECF No. 2.) In response, Mr. Owen claims Ms. Jones began asking "Mr. Owen to perform tasks that violated his medical restrictions," such as "stocking brake rotors and brake parts that weighed more than three (3) pounds." (Compl. ¶ 24, ECF No. 2.) Despite Mr. Owen routinely reminding Ms. Jones that his disability prevented him from lifting more than three pounds or engaging in repetitive tasks from August 2014 through January of 2015, Ms. Jones repeatedly asked Mr. Owen to complete assignments that violated his physical limitations. (Compl. ¶¶ 25-26, 30-32, ECF No. 2.) For example, in January of 2015, Ms. Jones asked Mr. Owen to stock thirty five five-quart oil containers, each weighing approximately ten pounds. (Compl. ¶¶ 36-37, ECF No. 2.) In addition, Ms. Jones told Mr. Owen to open and break down the boxes in which the oil came. (Compl. ¶ 38, ECF No. 2.) When Mr. Owen told Ms. Jones that these tasks caused him pain, Ms. Jones told Mr. Owen that the tasks "better be done." (Compl. ¶¶ 39-40, ECF No. 2.)

Around December 23, 2014, Ms. Jones gave Mr. Owen a medical form for his medical provider to complete. (Compl. ¶ 28, ECF No. 2.) On January 25, 2015, Ms. Jones placed Mr. Owen on unpaid leave for failing to return the medical form. (Compl. ¶ 46, ECF No. 2.) On February 4, 2016, O'Reilly told Mr. Owen he had until February 18, 2016 to submit a letter from his medical prover detailing his physical limitations. (Compl. ¶ 51, ECF No. 2.) Mr. Owen submitted the letter from his medical provider on February 10, 2015, after Ms. Jones refused to accept it on February 6, 2015. (Id. ¶¶ 51-52.) On February 26, 2015, Mr. Owen received a letter from O'Reilly stating it could not accommodate his medical restrictions and terminating his employment, effective February 24, 2015. (Id. ¶ 55.)

## II. DISCUSSION

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Hogan v. Winder, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss, and thus a motion for judgment on the pleadings, courts accept as true the well-pled factual allegations and view the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. See Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013).

### A. The Court Declines to Rule on the Admissibility of Evidence of Physical Injuries at this Time.

O'Reilly first asks this Court to dismiss Mr. Owen's claim for physical injury damages, arguing the ADA does not allow claims for physical injuries. (Mot. 10, ECF No. 25.) Mr. Owen counters that he "has simply not made a claim that O'Reilly should compensate him for his physical injuries in and of themselves. Consequently, it is both unnecessary and ultimately impossible to dismiss a claim which has not actually been asserted." (Pl's Mem. in Opp'n to Def.'s Mot. for Partial J. on the Pleadings, ("Opp'n"), 7, ECF No. 26.) Rather, Mr. Owen claims he merely seeks to introduce evidence of his physical injuries, exacerbated while working at O'Reilly, pursuant to his ADA claim for punitive damages. (Id. at 8-9.)

At the hearing, O'Reilly conceded that Mr. Owen has not pled a claim of damages for his exacerbated physical injuries. Nonetheless, O'Reilly asks this Court to address whether Mr. Owen may put on evidence during trial of his physical injuries pursuant to his ADA claim for punitive damages. (Mot. 12-13, ECF No. 25.) In this way, O'Reilly seeks a ruling in limine rather than a judgment on the pleadings.

> "[A] court should refrain from the undue speculation inherent in making evidentiary rulings before hearing the factual context at trial." [United States v. Cline, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002).] A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on all potential grounds. If this showing is not made, evidentiary rulings should be deferred and resolved in the context of the trial. . . . A court is within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity. Motions in limine which exclude broad categories of evidence should rarely be granted. The better practice is to address the issues of admissibility as they arise.

Walsh v. United States, No. 07-CV-568-PJC, 2009 WL 3755553, at *2 (N.D. Okla. Mar. 31, 2009) (citing Koch v. Koch Indus., Inc., 2 F.Supp. 2d 1385, 1388 (D. Kan. 1998), aff'd in part & rev'd in part on other grounds, 203 F.3d 1202 (10th Cir. 2000), Nat'l Union v. L.E. Myers Co. Group, 937 F.Supp. 276, 287 (S.D.N.Y. 1996); Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir.1975)).

The Court declines to make an evidentiary decision regarding evidence of exacerbated injuries based solely on the pleadings. As of the hearing, the parties had not conducted discovery on the matter, and thus O'Reilly could not identify the evidence with particularity that it sought to exclude. For example, the proposed exclusion would include everything from Mr. Owen's testimony that he experienced swelling to expert testimony from a doctor explaining a need for further surgeries. Without greater specificity of the evidence O'Reilly seeks to exclude, the Court cannot make a determination about the admissibility of the evidence at this stage. Mr. Owen may or may not wish to explain the interaction of his physical injuries with his remaining claims during trial or at summary judgment, and the Court will address that evidentiary issue if and when it arises in context.

For these reasons, the Court denies O'Reilly's Motion for Judgment on Mr. Owens non-existent ADA claim for damages for physical injuries and Motion to exclude evidence of physical injuries at trial.

**B. Mr. Owen States a Claim for Intentional Infliction of Emotional Distress.**

O'Reilly argues this Court should dismiss Mr. Owen's claim for intentional infliction of emotional distress because (A) the Utah Workers' Compensation Act bars Mr. Owen's claim for intentional infliction of emotional distress, and (B) even if the Utah

6

Workers' Compensation Act does not bar Mr. Owen's claim, Mr. Owen has failed to state a claim for intentional infliction of emotional distress upon which this Court can grant relief. (Mot. 13-14, ECF No. 25.)

### 1. The Utah Workers' Compensation Act Does Not Bar Mr. Owen's Claim for Intentional Infliction of Emotional Distress.

The Utah Workers' Compensation Act provides that "[t]he right to recover compensation pursuant to this chapter for injuries sustained by an employee . . . is the exclusive remedy against the employer . . . and the liabilities of the employer imposed by this chapter is in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee." Utah Code Ann. § 34A-2-105(1). "A worker, however, may sue an employer for injuries caused by an intentional tort" if the worker can "prove that an agent of the employer intentionally caused the worker's injury." Helf v. Chevron U.S.A. Inc., 2015 UT 81, ¶¶ 22-23, 361 P.3d 63, 69, (appeal of summary judgment), ("Helf II"); see also Bryan v. Utah Int'l, 533 P.2d 892, 893-94 (Utah 1975). "In order to satisfy the 'intent to injure' standard, a plaintiff must show that her injury resulted from an act that the actor knew or expected would cause injury." Helf v. Chevron U.S.A., Inc., 2009 UT 11, ¶ 50, 203 P.3d 962, 976, (appeal of dismissal), ("Helf I"). "[T]he 'intent to injure' standard distinguishes between intentional acts resulting in unknown or unexpected injuries, which are covered under the Act by workers' compensation, and intentional acts resulting in known or expected injuries, which fall within the intentional injury exception." Id. ¶ 26. Accordingly, a plaintiff establishes intent to injure by showing the employer "knew or expected" that its actions would result in injury to the employee, "even if [its] motive for acting was not to injure [the employee]." Id. ¶ 33.

7

The plaintiff must allege "a specific mental state in which the actor knew or expected that injury would be the consequence of his action." Id. ¶ 43.

O'Reilly argues that "Mr. Owen has not provided any facts demonstrating O'Reilly 'knew or expected, with substantial certainty,' that Mr. Owen 'would be injured . . . when he was assigned' those tasks expected of a Parts Specialist in the store." (Mot. 23–24, ECF No. 25.)

In this case, Mr. Owen has alleged facts, which taken as true, demonstrate that Ms. Jones had "a specific mental state in which [she] knew or expected that injury" would result to Mr. Owen when she requested he complete tasks she knew violated his physical limitations. See Helf I, ¶ 43. First, Mr. Owen alleges he repeatedly told Ms. Jones the requested tasks "were impossible for him to perform," "caused him pain and swelling," and "caused him pain." (See Compl. ¶¶ 25, 32, 39, ECF No. 2.) These allegations suggest Ms. Jones knew that Mr. Owen could not physically complete the tasks and that doing so caused Mr. Owen pain, which both the assignments themselves and the physical pain they caused create a reasonable inference of emotional distress on a motion for judgment on the pleadings. Moreover, Mr. Owen alleges a co-worker told him Ms. Jones "did not like how Mr. Owen could not lift or put certain items away," and "would assign him tasks that he was unable to perform in the hopes that he would quit." (See Compl. ¶¶ 43, 45, ECF No. 2.) Taken together, Mr. Owen has alleged that Ms. Jones "knew or expected" that her requests would result in injury to Mr. Owen and therefore force him to quit.

O'Reilly argues that because Ms. Jones primarily intended to force Mr. Owen to quit, she could not have acted with intent to inflict emotional distress. However, the

intent to injure standard requires only that "the employer intentionally placed an employee in harms way, [even if] the employer's motive was to increase profits—not inflict injury." Helf I, ¶ 34.  Similarly, even if Ms. Jones primarily intended to force Mr. Owen to quit, she intended to do so by intentionally placing him in harm's way.  Thus, because Mr. Owen alleges sufficiently that Ms. Jones acted with "intent to injure," the Utah Worker's Compensation Act does not bar Mr. Owen's claim for intentional infliction of emotional distress.

> **2. Mr. Owen Pled Facts Sufficient to Plead a Claim for Intentional Infliction of Emotional Distress.**

Under Utah law, to state a claim for intentional infliction of emotional distress, a party must plead facts:

> indicating that the defendant "intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality."

Anderson Dev. Co. v. Tobias, 2005 UT 36, ¶ 55, 116 P.3d 323, 338 (emphasis added) (quoting Bennett v. Jones, Waldo, Holbrook & McDonough, 2003 UT 9, ¶ 58, 70 P.3d 17).  In alleging a claim, plaintiffs need plead "only enough facts to state a claim to relief that is plausible on its face . . . [to] nudge their claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, § 1369 Judgment on the Pleadings—Compared With Other Motions, 5C Fed. Prac. & Proc. Civ. § 1369 (3d ed. 2017). O'Reilly argues that Mr. Owen failed to plead (1) that O'Reilly acted with the purpose of

9

inflicting emotional distress, and (2) that O'Reilly's conduct qualified as "outrageous and intolerable." (Mot. 14, 16, ECF No. 25.). Mr. Owen has sufficiently alleged intent, and O'Reilly has not convinced the Court that O'Reilly's conduct was not outrageous and intolerable as a matter of law.

### i. Mr. Owen Alleged that Ms. Jones Acted with Intent to Inflict Emotional Distress.

O'Reilly argues Mr. Owen failed to plead facts alleging O'Reilly acted with intent to inflict emotional distress. O'Reilly states "Mr. Owen specifically claims that his manager assigned him tasks hoping he would quit his job—not to cause him emotional distress." (Mot. 15, ECF No. 25.) Mr. Owen counters that "[w]hile O'Reilly did wish to make Mr. Owen's life difficult so that he would resign, the purpose of their actions was <u>first</u> to cause Mr. Owen emotional and physical injury so that he would <u>then</u> leave his employment." (Opp'n 13, ECF No. 26.) Mr. Owen pled that Ms. Jones said she purposely gave Mr. Owen tasks that violated his physical limitations hoping he would quit because she did not think she could fire him. (Compl. ¶¶ 41, 45, ECF No. 2.) She gave these assignments knowing they would cause Mr. Owen pain. (Compl. ¶¶ 32, 39, ECF No. 2.)

The Complaint alleges Mr. Owen learned through a coworker that Ms. Jones specifically intended to create a work environment, over the course of five months, that would force Mr. Owen to quit by making him choose between physical injury to himself and a paycheck. The Complaint further states "[a]ny reasonable person would have known that taking such action would cause severe emotional distress." (Compl. ¶ 76, ECF No. 2.) The coworker, Ms. Snedeger, explained to Mr. Owen that Ms. Jones did all

10

of this because Ms. Snedeger had told Ms. Jones she could not fire Mr. Owen because that would constitute disability discrimination.  (Compl. ¶¶ 23-26, 32, 41-45, ECF No. 2.)  With these alleged facts, Mr. Owen pleads enough to make Ms. Jones's intent to inflict emotional distress plausible.

### ii. Mr. Owen Pled Facts on Which Reasonable Minds Could Differ About Whether Ms. Jones's Conduct Qualified as Outrageous and Intolerable

O'Reilly argues that "[t]he allegation that O'Reilly assigned Mr. Owen the ordinary tasks of a Parts Specialist in order to make him quit is not 'unreasonable, unkind, or unfair' let alone able to elicit the 'outrage or revulsion' necessary to overcome the present motion."  (Mot. 18, ECF No. 25.)   Mr. Owen counters that "the aggregate effect of O'Reilly's multiple refusals to engage in an interactive process with Mr. Owen who consistently stated he was in pain; the threats made to his job; and the callous and inexplicable revocation of reasonable accommodations previously granted, could easily, cumulatively and plausibly amount to a finding that O'Reilly's conduct was sufficiently outrageous and intolerable to support" an intentional infliction of emotional distress claim.  (Opp'n 17, ECF No. 26.)

"To be considered outrageous, '[t]he conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair.'"  Franco v. Church of Jesus Christ of Latter-day Saints, 2001 UT 25, ¶ 28, 21 P.3d 198 (quoting 86 C.J.S. Torts § 570, at 722 (1997)).

> In the employment context, as in other factual settings, liability under the tort of intentional infliction of emotional distress ... may be found only where the conduct complained of has been so extreme in degree as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized society.

11

Oman v. Davis Sch. Dist., 2008 UT 70, ¶ 53, 194 P.3d 956, 969–70 (quoting 45 Am. Jur. 2d Proof of Facts 261 (1986) (alteration in original)).  At the summary judgment stage the Court must "'determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'" Cabaness v. Thomas, 2010 UT 23, ¶ 36, 232 P.3d 486, 499 (Utah 2010) (quoting Gygi v. Storch, 503 P.2d 449, 450 (Utah 1972)).  "However, '[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'"  Id. (quoting Gygi, 503 P.2d at 450).  Also at the summary judgment stage, the Utah Supreme Court has recognized statutes prohibiting sexual harassment provide evidence of "the generally accepted standards of decency and morality."  Retherford v. AT & T Comm., 844 P.2d 949, 977–79 (Utah 1992).

Under a 12(b)(6) standard, Mr. Owen need only allege facts that could plausibly qualify as outrageous.  O'Reilly admits Mr. Owen has pled a plausible failure to accommodate claim.  Further, like sexual harassment in the workplace, the country, long ago, prohibited employers from discriminating against people with disabilities. Thus, the standards set forth in the ADA provide evidence of what society views as outrageous and intolerable, and thus prohibited.  See id.  Here, Mr. Owen alleges he repeatedly told Ms. Jones the requested tasks "were impossible for him to perform," "caused him pain and swelling," and "caused him pain."  (See Compl. ¶¶ 25, 30, 32, 34-35, 39, ECF No. 2.)  The Complaint alleges Ms. Jones knew Mr. Owen could not physically complete the tasks and that by demanding Mr. Owen complete the tasks, she

would cause Mr. Owen pain and swelling. Moreover, Mr. Owen alleges that a coworker told him Ms. Jones "did not like how Mr. Owen could not lift or put certain items away," and "would assign him tasks that he was unable to perform in the hopes that he would quit." (See Compl. ¶¶ 43, 45, ECF No. 2.) And, Mr. Owen alleges Ms. Jones acted in this way to avoid complying with the well-established law prohibiting disability discrimination. (Compl. ¶¶ 23, 44-45, ECF No. 2.) These alleged facts state a plausible pattern of outrageous and intolerable behavior in a professional setting. Depending on how the facts develop through discovery, a jury could find Ms. Jones's actions violate accepted standards of decency and morality. Therefore, the claim survives the Motion for Judgment on the Pleadings.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES O'Reilly's Motion for Partial Judgment on the Pleadings.

DATED this 15th day of November, 2017.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge